THE PEOPLE *ex rel.* John J. Healy, State's Attorney,

*v.*

RICHARD HUGGARD.

*Opinion filed October 24, 1905.*

ATTORNEYS AT LAW—*what conduct is ground for disbarment.* A conspiracy between attorneys, whereby they prepared a bill for divorce for their client upon grounds which they knew did not exist, signing her name to the bill and affidavit without her consent, and seeking to obtain service by publication upon defendant although they knew his place of residence and that it was within the State of Illinois, is ground for disbarment.

INFORMATION for disbarment.

JOHN J. HEALY, State's Attorney, (JOHN L. FOGLE, of counsel,) for relator.

EMIL A. MEYER, for respondent.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an information filed in this court by John J. Healy, State's attorney of Cook county, upon the relation of the grievance committee of the Chicago Bar Association, for the disbarment of John Oliver Wagner and Richard Huggard. A rule to show cause was entered at the February term, 1905, and separate answers having been filed by the respondents, at the March term, upon motion of said State's attorney, the rule as to John Oliver Wagner was made absolute upon the admissions of guilt contained in his answer, and as to Richard Huggard the case was referred to one of the masters in chancery of Cook county to take the evidence and report the same to this court, which has been done in compliance with such order, from which it appears that in the month of March, 1904, one Phœbe Morrison, who resided in the city of Chicago, called upon Richard Huggard, then practicing law in said city, to consult with him in regard to obtaining a decree of divorce from her

husband, Jesse A. Morrison. She informed Huggard that her husband had neglected her and refused to support her, but stated to him that her husband had not been guilty of physical violence towards her and was not addicted to the excessive use of intoxicating liquors. She also stated to Huggard that her husband then resided at Byron, Ogle county, Illinois. Huggard stated his charges would be $50; that she had good grounds for divorce, and that it would not be necessary to notify her husband, personally, of the commencement of the suit, but that he would publish a notice of the commencement of the suit in a newspaper in the city of Chicago which was read only by lawyers, and that her husband would not be apt to see the notice or to learn of the commencement of the suit, and she could obtain a decree without difficulty and much cheaper than though he had personal notice. Mrs. Morrison appears to have acted in the utmost good faith and informed Huggard she wanted everything done right, so that if she obtained a decree it would be a valid and binding one, in reply to which Huggard informed her a notice to her husband through a newspaper would be all that was necessary. At that interview Mrs. Morrison had no money, but agreed to return within a few days and pay Huggard a retainer and to advance the necessary costs, when it was agreed he was to file a bill. Some two weeks later Mrs. Morrison, in company with a friend named Julia Matlack, called upon Huggard, and Mrs. Morrison paid him $25 to apply on fees, and informed him Miss Matlock was one of her witnesses. Huggard then talked with Miss Matlack with reference to the case, and she informed him she knew Jesse A. Morrison; that he lived at Byron, Ogle county, Illinois; that he had neglected and failed to properly support and provide for his wife, but that she did not know of his having committed physical violence upon her or that he was given to the excessive use of intoxicating liquors. After the payment of the $25 Huggard informed Mrs. Morrison it would be necessary that she pay

him $10 in addition thereto with which to pay court costs, and that upon the payment of that amount he would commence suit. A few days afterwards, at the request of Mrs. Morrison, Miss Matlack called upon Huggard and paid him $10. Thereafter Mrs. Morrison called upon Huggard and inquired about the suit. In April a bill for divorce was filed by Huggard and Wagner in the office of the clerk of the superior court of Cook county, entitled *Phœbe Morrison* vs. *Jesse A. Morrison,* in which Jesse A. Morrison was charged with extreme and repeated cruelty, two specific instances of which were fully set out, and habitual drunkenness, and an affidavit was filed in said clerk's office purporting to be signed by Phœbe Morrison and sworn to before John Oliver Wagner, notary public, which stated that Jesse A. Morrison was not a resident of the State of Illinois, and that the affiant had made diligent inquiry to learn his place of residence and had been unable to ascertain the same, and on April 8, 1904, Huggard and Wagner caused to be published in the *Chicago Law Journal* a notice to Jesse A. Morrison of the pendency of said suit, and Huggard delivered to Mrs. Morrison a copy of the paper containing such notice, and on June 7, 1904, Huggard, by letter, notified Mrs. Morrison to appear on the following Saturday with her witnesses before Judge Brentano, one of the judges of the superior court, at which time her case would be heard. Prior to the time when she was notified by Huggard to appear before Judge Brentano, Mrs. Morrison had consulted another lawyer, who examined the files in the case commenced by Huggard and Wagner, and upon ascertaining the grounds for divorce stated in the bill and that Jesse A. Morrison was being proceeded against as a non-resident, Mrs. Morrison did not appear before Judge Brentano in response to said notice and nothing further was done in the case commenced by Huggard and Wagner.

In the answer filed by John Oliver Wagner, upon which the rule as to him was made absolute, he admitted that he signed the name of Phœbe Morrison to said bill containing

the charges of extreme and repeated cruelty and habitual drunkenness, and to the affidavit of non-residence, to which he attached his jurat as a notary public without ever having seen her and without her having seen said bill or affidavit, and without her knowledge or consent.  His testimony is found in this record, he having been called by the relators as a witness before the master, wherein he states that he relied upon the statements of Huggard when he prepared the bill charging extreme and repeated cruelty and habitual drunkenness against Jesse A. Morrison, and upon information furnished him by Huggard when he drew the affidavit purporting to be signed by Mrs. Morrison, that Jesse A. Morrison was a non-resident of the State of Illinois and that his residence upon due inquiry could not be ascertained, and that his wrong consisted in signing Mrs. Morrison's name to the bill and affidavit without her knowledge or consent and out of her presence.  Huggard testified before the master that he informed Wagner truthfully of Mrs. Morrison's grounds for divorce as he understood such grounds from her statements to him, and gave to Wagner a memorandum of the facts prepared by him the first time he talked with Mrs. Morrison, and that he never stated to Wagner Jesse A. Morrison was a non-resident of the State of Illinois and that upon diligent inquiry his residence could not be ascertained.  He admits, however, that all the information Wagner had with reference to the case, as Wagner never saw Mrs. Morrison until after this disbarment proceeding was commenced, Wagner obtained from him, and that he knew Jesse A. Morrison was a resident of Illinois and that he was being proceeded against in said case by publication, but seeks to excuse his conduct by saying his practice had been confined mainly to the police courts, and he supposed the law permitted service by publication in chancery cases where defendant resided outside the county wherein the suit was pending.

We have carefully read and considered the evidence found in this record, and are impressed therefrom with the

217—24

conviction that Huggard and Wagner entered into a conspiracy to file a bill in the name of Mrs. Morrison against her husband, Jesse A. Morrison, on the ground of extreme and repeated cruelty and habitual drunkenness when they knew such grounds did not exist, and to obtain service upon said Jesse A. Morrison in that suit by publication although they knew he was a resident of this State, and that to effect such conspiracy they prepared a bill charging Jesse A. Morrison with extreme and repeated cruelty and habitual drunkenness and an affidavit that he was a non-resident of this State, and signed Mrs. Morrison's name thereto without her knowledge or consent, and John Oliver Wagner attached his jurat as a notary public to such affidavit and filed said bill and affidavit in the clerk's office of the superior court of Cook county, and published notice of the pendency of such suit in the *Chicago Law Journal,* and furnished Mrs. Morrison with a copy of the paper containing the notice of said suit and notified her to appear in court for trial. Whether they expected to obtain a decree, or that the court, upon hearing the evidence, would dismiss the bill for want of equity, does not appear, but that they commenced and carried on said proceedings with a view to obtain from Mrs. Morrison the $50 which she had agreed to pay Huggard for obtaining for her a divorce, and by means of such proceeding obtained from her at least $25 of said amount, which they divided between themselves, this record clearly shows.

John Oliver Wagner has admitted his guilt in this proceeding upon the record. While Richard Huggard did not prepare the papers which were filed in court, Mrs. Morrison advised with him and he collected $25 from her, which he divided with Wagner. The conduct of the respondents was most unprofessional and merits the strongest condemnation.

The rule as to Richard Huggard will be made absolute, and an order will be entered striking his name from the roll of attorneys of this court.          *Rule made absolute.*